IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      STANLEY DALE WILMOTH,           Case No. 07-30647-KRH
                                            Chapter 7
            Debtor.

## MEMORANDUM OPINION

Before the Court is the objection of the chapter 7 trustee to certain exemptions claimed by Stanley Dale Wilmoth (the "Debtor") pursuant to Rule 4003 of the Federal Rules of Bankruptcy Procedure (the "Objection"). The Objection challenges the Debtor's right to amend his schedules to claim a previously unscheduled asset as exempt after the Debtor's case had been closed. Based upon the evidence presented at the hearing conducted on December 17, 2008 (the "Hearing"), the briefs submitted by the parties, and the argument of counsel, the Court sustained the Trustee's Objection and disallowed the Debtor's exemption of the unscheduled asset by Order entered February 18, 2009. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1] The Court has subject-matter jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

The Debtor suffered injuries resulting from an automobile accident that occurred in Farmville, Virginia, in December of 2005. Fourteen months later the Debtor filed this Chapter 7

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

bankruptcy case on February 21, 2007 (the "Petition Date"). Harry Shaia, Jr. (the "Trustee") was appointed as the chapter 7 trustee in the Debtor's bankruptcy case. Just three months after the Petition Date and while his bankruptcy case was still open, the Debtor filed suit against the Town of Farmville and George Brown in the Circuit Court for Prince Edward County, Virginia, seeking damages as a result of the prepetition automobile accident (the "Cause of Action"). The Cause of Action was an asset of the Debtor's bankruptcy estate,[2] but it was never disclosed to the Trustee. Although the Debtor scheduled unsecured debts of $80,992 relating to medical expenses resulting from the prepetition automobile accident, the Debtor failed to schedule the Cause of Action on his schedule B.[3] The Debtor also failed to exempt the Cause of Action by listing it on his schedule C.[4]

The Section 341 Meeting of Creditors was conducted on April 2, 2007.[5] The existence of the Cause of Action was not disclosed to the Trustee at the meeting of creditors. As there were no assets to administer for the benefit of the bankruptcy estate and its creditors, the Trustee filed a Report of No Distribution on April 3, 2007. In due course, the Debtor received his discharge. On June 11, 2007, the case was closed. The case remained closed and inactive for over a year. Then on August 7, 2008, the Debtor filed a motion to reopen his bankruptcy case (the "Motion to Reopen"). As no objections were filed to the Motion to Reopen, the Court granted the motion by

---

[2] The commencement of a bankruptcy case creates an estate that includes all legal and equitable interests of the Debtor in property as of the commencement of the case. 11 U.S.C. § 541.

[3] The Debtor is required to file schedules listing all of the Debtor's assets and all of the Debtor's liabilities. 11 U.S.C. § 521(a)(1)(B)(i). The Debtor is required to use the official forms to comply with § 521 of the Bankruptcy Code. Fed. R. Bankr. P. 1007. Official form 6B (Schedule B) is to be used for reporting all of the Debtor's interests in personal property.

[4] The Debtor is required to list the property claimed as exempt under § 522 of the Bankruptcy Code on official form 6C (Schedule C) within the time specified in Rule 1007 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 4003(a).

[5] Section 343(a) of the Bankruptcy Code requires the Debtor to appear at the meeting of creditors held under § 341 of the Bankruptcy Code and submit to an examination under oath.

2

order entered September 17, 2008, and the Debtor's case was reopened. Fifteen days later, on October 2, 2008, the Debtor filed an Amended Schedule B that identified the Cause of Action for the first time as an asset of the bankruptcy estate. The Debtor also filed an Amended Schedule C that claimed the Cause of Action as exempt (the "Exemption").[6] On October 31, 2008, the Trustee filed the Objection now at issue.

Upon filing his Chapter 7 petition, the Debtor was required to schedule the Cause of Action together with all of his other assets because those assets became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a). The Trustee was required to administer the property of the estate for the benefit of the Debtor's creditors. *See* 11 U.S.C. § 704. Had the Cause of Action been scheduled properly by the Debtor and had it been claimed timely as exempt, it is likely that the Trustee would have abandoned his interest in the asset.[7] But it was not abandoned. As the Debtor failed "to list [the Cause of Action as] an asset of the estate in his schedules and this property [was] not administered before the case [was] closed, . . . the asset [was] not deemed abandoned under § 554(c) of the Bankruptcy Code at the time the case was closed. The Cause of Action, therefore, remains property of the estate under § 554(d)." *In re Medley*, 29 B.R. 84, 86–87 (Bankr. M.D. Tenn. 1983) (internal citations omitted). Until and unless the Court allows the Debtor to exempt the property upon the reopening of the bankruptcy case, the Cause of Action remains property of the bankruptcy estate and only the Trustee has standing to pursue it. The question before the Court is whether the Debtor may now, as a matter

---

[6] Va. Code Ann. § 34-28.1 provides in relevant part that "all causes of action for personal injury . . . and the proceeds derived from court award or settlement shall be exempt from creditor process against the injured person. . . ." Thus, any monetary proceeds received by a debtor resulting from a cause of action for personal injury are exempt from creditors and shall not be administered by the trustee for the benefit of the estate if and only if properly claimed as exempt by the debtor. *See, e.g.*, *In re Webb*, 210 B.R. 266, 270 (Bankr. E.D. Va. 1997).

[7] If the Trustee had had the opportunity to abandon the asset, it no longer would have been an asset of the bankruptcy estate. Abandonment constitutes a divestiture of the estate's interest in the property. 11 U.S.C. § 554; *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd* 502 U.S. 410 (1992).

3

of right, amend his schedules to claim the Cause of Action as exempt when he failed to schedule the Cause of Action as an asset in the first instance before his case was closed.

In any hearing on an objection to a debtor's claim of exemption, "the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). The Trustee argues that the Debtor cannot amend his schedule C after the case has been closed to claim the Exemption unless he can show excusable neglect. The Debtor argues that the he has the right to amend his schedules as a matter of course at any time pursuant to Rule 1009 of the Federal Rules of Bankruptcy Procedure. Furthermore, the Debtor argues, the Trustee did not object to the Motion to Reopen wherein the Debtor stated the reopening was for the purpose of amending his schedules to claim an exemption. The Debtor asserts that the reopening of the case implicitly granted the Debtor the right to list and claim the Exemption for the Cause of Action.

"The Fourth Circuit has held that the decision whether to reopen a bankruptcy case depends on the circumstances of the individual case and is within the sound discretion of the bankruptcy court." *In re Woolard*, 190 B.R. 70, 73 (Bankr. E.D. Va. 1995) (quoting *Hawkins v. Landmark Fin. Co.*, 727 F.2d 324, 326 (4th Cir. 1984)); *see also In re Alexander*, 300 B.R. 650, 653 (Bankr. E.D. Va. 2003) (citing *Stackhouse v. Plumlee (In re Plumlee),* 236 B.R. 606, 610 (E.D.Va.1999)). Reopening a case does not automatically grant the Debtor a right to amend schedules or take other actions that ought to have occurred prior to closing; instead, the reopening of the case allows administrative and ministerial loose ends to be tied. *See Finch v. Coop* (*In re Finch*), 378 B.R. 241, 246 (B.A.P. 8th Cir. 2007) (citing *In re Bartlett*, 326 B.R. 436, 438 (Bankr. N.D. Ind. 2005)). Chapter 7 trustees are not automatically reappointed as trustees upon the reopening of a bankruptcy case. Fed. R. Bankr. P. 5010. The Trustee had not been reappointed when the Motion to Reopen was filed and he had no standing to object to the

4

reopening of this case.  The Office of the United States Trustee did not re-appointed the Trustee as trustee in the reopened chapter 7 bankruptcy case until November 13, 2008.  The Trustee was required to object to the Debtor's claimed Exemption within 30 days after the Debtor filed his amended schedules.  *See* Fed. R. Bankr. P. 4003(b)(1).  The Court finds that the order reopening this case did not implicitly grant the Debtor the right to list and claim the Exemption for the Cause of Action and that the Objection of the Trustee is timely.

A debtor in a chapter 7 case is required to file schedules of assets and liabilities prepared as prescribed by the appropriate official forms within 15 days of the Petition Date.  Fed. R. Bankr. P. 1007.  The schedules are required to be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.  Fed. R. Bankr. P. 1008.  Rule 1009 of the Federal Rules of Bankruptcy Procedure provides a debtor the general right to amend a schedule as a matter of course "at any time *before* the case is closed."  Fed. R. Bankr. P. 1009 (emphasis added).  This right is liberally construed, and courts generally will not deny a motion to amend a claim of exemption in the absence of fraud.  In this case, however, the Debtor is attempting to amend his schedules to list and claim an exemption for the Cause of Action *after* his bankruptcy case had been closed.  To permit the Debtor, at this time, to amend Schedule C ignores the plain language of Rule 1009.  *See In re Bartlett*, 326 B.R. 436, 439 (Bankr. N.D. Ind. 2005) ("Those words have meaning and to give them their proper effect requires the court to recognize that the act of closing a case terminates the right to amend.").  A reopened case is not the same as a never-closed case.  Unless the Court is to ignore the plain language of Rule 1009 of the Federal Rules of Bankruptcy Procedure, the time within which the Debtor had to amend Schedule C and claim the Cause of Action exempt as a matter of right was *before the case was closed*.  The Debtor's right to amend the exemption schedule ended with the closing of the case.

5

Rule 1009 of the Federal Rules of Bankruptcy Procedure is not applicable to motions to amend schedules made after a case has been closed. Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure governs motions to permit an act to be done that are made after the expiration of the specified time period. Fed. R. Bankr. P. 9006. It is this Rule that allows the Court to enlarge the time period for amending Schedule C upon the reopening of the Debtor's bankruptcy case. *See, e.g.*, *Moretti v. Bergeron* (*In re Moretti*), 260 B.R. 602, 607–08 (B.A.P. 1st Cir. 2001) (Rule 1009(a) "specifies no standard for amendment after the case is closed. The relevant standard is supplied by Rule 9006(b)(1). . . ."); *In re Medley*, 29 B.R. 84 (Bankr. M.D. Tenn. 1983). When an act, such as amending the schedules, "is allowed to be done at or within a specified period by these rules," such as *before* a case is closed, "the court, for cause shown, may at any time in its discretion[,] . . . on motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The period of time in which the Debtor had the ability to amend his schedules as a matter of right expired when his case was closed. Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure allows this Court, in its discretion and for cause shown, to extend the period of time for the Debtor to amend his schedules if the failure to amend before the case was closed resulted from excusable neglect.

The Trustee argues that the Debtor's failure to schedule the Cause of Action as an asset and his failure to claim that asset as exempt did not result from the Debtor's excusable neglect. In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court of the United States explained the type of circumstances that give rise to a finding of excusable neglect. The issue in *Pioneer* was whether "an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute 'excusable neglect' within the

6

meaning of [Rule 9006(b)(1)]." *Pioneer*, 507 U.S. at 383. In that case, creditors sought leave to file a late proof of claim because their counsel was unaware of the bar date due to overwhelming professional disruptions. The Court emphasized the fact that the notice of the bar date was announced unusually and inconspicuously in the latter pages of the Notice of the Section 341 Meeting of Creditors. *See Pioneer*, 507 U.S. at 398. The Court defined *neglect* as encompassing inaction caused by "inadvertence, mistake, or carelessness," as well as "intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388.

However, only *excusable* neglect allows for an expansion of time under Rule 9006. *Excusable* is not a defined term under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. The Supreme Court defined *excusable* as "at bottom an equitable [inquiry] taking into account all relevant circumstances surrounding the party's omission." The factors to be considered are "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395 (citing *In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 677 (6th Cir. 1991) (applying the factors from *In re Dix*, 95 B.R. 134 (B.A.P. 9th Cir. 1988))). These factors are not exclusive, and the standard is a "totality of the circumstances" inquiry that does not require a rigid, elemental application of each factor. *See Pioneer*, 507 U.S. at 385–86 (noting that the Court of Appeals for the Sixth Circuit believed the factors to be "helpful, although not necessarily exhaustive, guides").

The United States Court of Appeals for the Fourth Circuit applied the *Pioneer* standard for determining excusable neglect in *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533–34 (4th Cir. 1996) (applying the standard in the context of the Federal Rules of Appellate

7

Procedure rather than the Federal Rules of Bankruptcy Procedure). In an unpublished decision, the Fourth Circuit upheld the application of the *Pioneer* standard in a Chapter 7 matter where excusable neglect was not found when Schedule C exemptions were filed late. *Bryant v. Smith (In re Gantt)*, No. 96-1721, 1998 WL 416798, at *3–4 (4th Cir. July 22, 1998) (per curiam). Therefore, in determining whether or not the failure to list and exempt the Cause of Action on the Debtor's schedules is the result of "excusable neglect," it is incumbent upon the Court to apply the *Pioneer* rule to the Debtor's actions in this case.

While his Chapter 7 case was still pending in April 2007, the Debtor filed suit in state court to recover damages on account of his prepetition Cause of Action. The accident that gave rise to the state court suit and the medical fees incurred as a result of the Debtor's personal injuries appear to be the reason for the Debtor's decision to file the bankruptcy case. The accident and injuries were fully disclosed to Debtor's counsel. At the Hearing on this matter, the Debtor testified that he told his counsel about the prepetition automobile accident prior to the Petition Date. The Debtor testified that he and his counsel also discussed the Cause of Action while the bankruptcy case was pending prior to the filing of the state court suit. Debtor's counsel was well aware that the Cause of Action was an asset of the bankruptcy estate that needed to be scheduled. And yet it was not. The failure to list the Cause of Action on the Debtor's Schedule B and to claim it as exempt on the Debtor's Schedule C meets the *Pioneer* definition of neglect if it was the result of the Debtor's and his counsel's inadvertence or carelessness.[8]

The Court must consider next whether the Debtor's neglect is excusable. The length of the delay and its impact on this Court's ability to efficiently administer the case weighs heavily

---

[8] While the Debtor has not formally advanced the argument that the Debtor may be excused for the acts of counsel, *but see* (Br. in Supp. of Pl.'s Right to Amend, Jan. 7, 2009, at ¶ 9), the Court in *Pioneer* held that this argument fails and policy dictates that clients "be held accountable for the acts and omissions of their chosen counsel. . . . [T]he proper focus is upon whether the neglect of [clients] *and their counsel* was excusable." *Pioneer* 507 U.S. at 397 (emphasis in original).

8

against the Debtor. Approximately fourteen months elapsed from the closing of the bankruptcy case to the date on which the Debtor filed the Motion to Reopen. The Debtor filed the state court suit in the spring of 2007, before the bankruptcy case had been closed and while the Debtor still had opportunity to amend his schedules as a matter of right. *See* Fed. R. Bankr. P. 1009. The purpose of the Rules is to secure a speedy and just distribution of assets, and permitting this amendment would subvert that purpose and incentivize bad behavior. *See, e.g.*, *Mestena v. Atravasada Land & Cattle Inc.* (*In re Atravasada Land & Cattle Inc.*), 388 B.R. 255, 279 (Bankr. S.D. Tex. 2008) ("[T]he bankruptcy system is premised on the ability to exercise speed and efficiency in the administration of the estate and liquidate assets free from future claims and litigation."). To allow the Exemption would encourage debtors and their counsel to shirk their duties if there is a belief that the Court would be willing to allow parties to correct mistakes that result from inexcusable neglect after the case is closed and reopened. Without adequate incentive for the Debtor to fully and accurately disclose all pertinent information while the case is pending, the integrity and efficiency of the bankruptcy process will be compromised by adding to the administrative burden of reopening cases to do what should have been done before.

The reason for the delay and whether the delay was beyond the reasonable control of the person whose duty it was to perform is one of the *Pioneer* factors that also weighs against the Debtor. The Debtor has not provided an excusable reason as to why the Cause of Action was not listed while the case was open. In his Answer, the Debtor states that "he was not aware that the personal injury cause of action was a possible asset of his bankruptcy estate." (Answer ¶ 7.) The Debtor was responsible for full disclosure on the Debtor's schedules. 11 U.S.C. § 521. The duty to list all property and applicable exemptions is an ongoing duty prior to closing of the case and the duty falls squarely on the Debtor's shoulders. *See Pioneer*, 507 U.S. at 397 (clients are "held

9

accountable for the acts and omissions of their chosen counsel"). The Debtor testified to informing counsel of the Cause of Action. Thus, the Debtor and his counsel controlled the ability to list the claim as each was aware of its existence. While the Trustee must inspect the financial affairs of the Debtor, the integrity of the Trustee's inspection is dependent upon the honesty of the Debtor and the transparency of the information the Debtor presents to the Trustee, the Court, and creditors. *See In re Thomasma*, 399 B.R. 20, 24 (Bankr. W.D. Mich. 2008) (quoting *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007)). While the Court in *Pioneer* found the neglect to be excusable, the facts in this case point to the opposite conclusion. There, a creditor was only twenty days late to file a proof of claim, and the Court based its ruling on the inconspicuousness of notice of the bar date. Here, the Debtor testified that he made his attorney aware of the potential claim, yet the attorney failed to timely amend the schedules to list and claim and exemption for the Cause of Action. The act of amending his schedules was well within the Debtor's reasonable control.

Whether the Debtor acted in good faith is the last issue for consideration. The Debtor had no right to file the state court action in May of 2007. The Cause of Action did not belong to him; it was property of his bankruptcy estate. Were this Court to allow the Debtor to claim the Exemption now, the Debtor, in all likelihood, would be precluded from pursuing the Cause of Action on his own behalf. The Exemption would not relate back to the time the Debtor filed the state court lawsuit in order to retroactively give the Debtor standing to have commenced the action in the first instance. The lawsuit would be dismissed for the Debtor's lack of standing at the time it was commenced. The Debtor could not reinstitute the lawsuit as his time for pursuing the Cause of Action has expired under the applicable Virginia statute of limitations. The Trustee is not similarly time barred. *See* 11 U.S.C. § 108(a). The Trustee has standing to pursue the

Cause of Action on behalf of the estate. *See* Fed. R. Bankr. P. 6009. If the Court allows the Exemption, neither the estate nor the Debtor will be able to pursue the Cause of Action. On the other hand, if the Court sustains the Trustee's objection and disallows the Exemption, the Trustee has the opportunity to recover money for the estate and its creditors.

In light of the forgoing the Court need not decide whether the Debtor's omission was the result of bad faith on the part of the Debtor or his attorney. The Debtor's testimony at the Hearing suggests he was forthright with his attorney regarding disclosure of the Cause of Action. On the other hand, the Debtor signed his schedules under penalty of perjury without disclosing the asset. The trustee argues that whether or not the Cause of Action would have been exempt in the bankruptcy proceeding before the case was closed does not mean that the Debtor did not intend to conceal the asset. The Trustee suggests that the failure to list the asset may have been to avoid alerting medical service providers with statutory lien rights to this potential source of recovery. While the Debtor's limited education is not an excuse, this Court finds that the Debtor's seventh-grade education level mitigates against a finding of deliberate intent to defraud the Trustee. *Cf. In re Walker* 323 B.R. 188, 196n.7 (Bankr. S.D. Tex. 2005) (when the debtor moved to reopen her case to claim exemptions, the court denied the motion to reopen, explaining that "[g]iven the fact that the Debtor had been employed as a legal secretary for over twenty years, the Court [was] skeptical that the Debtor did not have actual knowledge of her claim . . . prior to the Debtor receiving her discharge, and yet she failed to disclose the claim."). The Court does not find that the failure to disclose the Cause of Action was deliberate on the part of the Debtor. It was most probably the result of counsel's inadvertence or carelessness. Regardless whether this omission was the result of bad faith, the Court concludes that the inadvertence or carelessness to list the Cause of Action as an asset and to claim it as exempt is not excusable.

Pursuant to the plain language of Rules 1009 and 9006 of the Federal Rules of Bankruptcy Procedure the Court concludes that the Debtor does not have the right as a matter of course to amend his schedules to claim the Cause of Action as exempt after his case was closed. Rather, the Court may, in its discretion and for cause shown, extend the period of time for the Debtor to amend his schedule C only if the Court finds that the Debtor's failure to amend his schedules before the case was closed was the result of excusable neglect. Applying the Supreme Court's holding in *Pioneer* to the facts and circumstances of this case, this Court will not allow the Debtor's Exemption as the failure to claim it before the Debtor's case was closed was not the result of excusable neglect.

A separate order has issued.

Entered: _____


      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE



Copies to:

**Stanley Dale Wilmoth**
P.O. Box 29
Meherrin, VA  23954

**Richard O. Gates**
P. O. Box 187
Chesterfield, VA  23832

**Harry Shaia, Jr**
Spinella, Owings & Shaia, P.C.
8550 Mayland Drive
Richmond, VA  23294

**Kimberly A. Pierro**
Kutak Rock LLP
1111 E. Main St., Suite 800
Richmond, VA 23219-3500

**Robert B. Van Arsdale**
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219